Filed 2/18/16  O'Leary v. Dillingham Construction CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| BETTY O'LEARY,<br><br>　　　　Plaintiff and Appellant,<br><br>v.<br><br>DILLINGHAM CONSTRUCTION N.A., INC.,<br><br>　　　　Defendant and Respondent. | A142848<br><br>(San Francisco City & County<br>Super. Ct. No. CGC-11-275803) |

Plaintiff Betty O'Leary has maintained this action for asbestos exposure on behalf of her late husband, Michael O'Leary (O'Leary).  One of the many defendants, Dillingham Construction N.A., Inc. (Dillingham), moved for summary judgment.  The pivotal issue was whether the insulation swept into the air by Dillingham laborers in the early 1970's, near where O'Leary was working, contained asbestos.  Plaintiff's expert, a certified asbestos consultant, reviewed a physical description of the insulation and employed his special knowledge of insulation materials use in and around the early 1970's.  He had "no doubt" the insulation O'Leary inhaled contained asbestos.  The trial court, however, ruled the expert's opinion was too speculative and excluded it.  Without this testimony, plaintiff had no evidence the insulation contained asbestos, and therefore no case.  The trial court therefore granted summary judgment to Dillingham.

Plaintiff appeals, challenging the trial court's rejection of her expert's testimony. We conclude the declaration was sufficient, and reverse.

1

## BACKGROUND

The only evidence of O'Leary's exposure to insulation dust comes from his former colleague, James Hetzel, who authored a declaration in opposition to Dillingham's motion for summary judgment.

According to Hetzel, he and O'Leary were riggers "from the 1970s into the late 1980s . . . at the Tosco Refinery, Avon, CA where [they] worked on shut-downs." O'Leary was Hetzel's supervisor. O'Leary not only inspected the work of Hetzel's crew, he also did "hands-on work" alongside him. During rigging work, they disturbed insulation on heavy equipment. Also, many other workers around them would, during shut-downs, disturb "the old insulation on" nearby "steam lines and large machinery." During the "early to mid 1970s," Hetzel saw Dillingham employees sweep "dust and debris from the old thermal insulation that had been removed from steam lines and large machinery" at times as close as five or 10 feet from O'Leary. The "old insulation was white to off-white, the outer part would be darker in color from age, it was crumbly and brittle and there were visible fibers when you see the broken pieces up close." This insulation was "a different color and texture to what . . . was patched on piping and equipment much more recently."

Plaintiff's expert Charles Ay is a state-certified asbestos consultant who has been inspecting residential, commercial, and industrial buildings for asbestos for over 30 years, since 1984. Before that, Ay worked for 25 years, from 1956 until 1981, as an insulator in refineries, power plants, other buildings, and ships where he had experience with a wide range of both asbestos-containing and asbestos-free insulation products. For his state certification, Ay keeps current with asbestos literature and completes mandatory continuing education annually. He has taken numerous courses in how to identify asbestos-containing material. Additionally, Ay has "researched materials used to make insulation, and ha[s] examined and tested" for asbestos "various types of insulation

2

materials found in industrial settings, including refineries." He thus claims "the ability to recognize asbestos versus non-asbestos-containing thermal insulation materials."

In this case, Ay offered an analysis based on Hetzel's observations of the "old" insulation being removed near O'Leary by Dillingham employees. Ay cataloged the observations: the insulation came off of refinery steam lines and large machinery, was white to off-white in color, had a darker outer part because of age, was crumbly and brittle, had visible fibers in broken-off pieces, and was different in color and texture from insulation that put on much more recently.

Then, Ay opined this "thermal insulation . . . more likely than not" contained asbestos. Based on Hetzel's observations, the insulation "could only have been a calcium silicate or '85% mag.' " All 85 percent mag insulation contained asbestos. "Calcium silicate sometimes did, but sometimes did not. Calcium silicate is an off-white to light grey, sectional material which is harder and darker in color than 85% magnesia. The asbestos-containing varieties were extremely hard and required vigorous sawing to penetrate the material, whereas the non-asbestos-containing varieties are less hard, less rigid, easier to cut, and readily break apart during rough handling."

That some calcium silicate was asbestos free was irrelevant to Ay, given the timing of Hetzel's observations. Both 85 percent mag and calcium silicate "always had asbestos as a component throughout the 1950's and 1960's and into the early 1970's when the first non-asbestos containing pipe covering and block insulation were first introduced." Further, Ay opined that the use of asbestos-containing thermal insulation across a variety of settings was "virtually identical[,] at least up to approximately 1974 when no new asbestos thermal insulation was installed." Accordingly, Ay had "no doubt . . . the pipe and block insulation . . . was asbestos containing and was applied during years when such materials were prevalent."[1]

---

[1] We deny Dillingham's request for judicial notice, filed January 11, 2016, of a minute order further reflecting the trial court's ruling on the admissibility of the Ay

3

" 'A defendant is entitled to summary judgment if the record establishes as a matter of law that none of the plaintiff's asserted causes of action can prevail.' " (*Sherman v. Hennessy Industries, Inc.* (2015) 237 Cal.App.4th 1133, 1138.) Generally, the defendant must first make a prima facie showing that there is no triable issue of material fact. If successful, the burden of production shifts to the plaintiff, who must then make a prima facie showing that there is a triable issue. (*Ibid.*)

For the most part, review of a summary judgment is de novo. (*Ahn v. Kumho Tire U.S.A., Inc.* (2014) 223 Cal.App.4th 133, 136.) As to the proffered evidence, we, like the trial court, strictly construe the moving party's evidence while liberally construing the opponent's. (*Id.* at p. 137.) However, we "disregard evidence to which a sound objection was made" in the trial court and we "consider any evidence to which no objection or an unsound objection was made." (*Id.* at pp. 136–137.) Although an open question, the weight of California appellate court authority holds that we review a trial court's summary judgment evidentiary rulings for an abuse of discretion rather than de novo. (*Id.* at pp. 143–144.) Even so, it remains an abuse of discretion to rest an evidentiary ruling on an error of law, a matter which we would determine de novo. (See *ibid.*; *Shuts v. Covenant Holdco LLC* (2012) 208 Cal.App.4th 609, 617.)

Here, there is no dispute on appeal that Dillingham met its initial burden; rather, the focus is on plaintiff's evidence. All also agree, at least for summary judgment, that the declaration of O'Leary's colleague, Hetzel, establishes Dillingham exposed O'Leary to dust originating from insulation removed from steam lines and large machinery in the

---

Declaration. The request is exceedingly untimely. In any event, the minute order does not assist or change our analysis in this case. (*Stockton Citizens for Sensible Planning v. City of Stockton* (2012) 210 Cal.App.4th 1484, 1488 [judicial notice of irrelevant materials denied].)

early 1970's. The question is whether the declaration of Charles Ay is sufficient to raise a triable issue this insulation contained asbestos.

A qualified expert is not free "to express any opinion within the area of expertise." (*Jennings v. Palomar Pomerado Health Systems, Inc.* (2003) 114 Cal.App.4th 1108, 1117 (*Jennings*); *Powell v. Kleinman* (2007) 151 Cal.App.4th 112, 123 (*Powell*).) A trial court can exclude an expert's opinion as speculative, lacking foundation, or without sufficient certainty. (*Powell*, *supra*, 151 Cal.App.4th at p. 123.) Such opinions have "no evidentiary value." (*Jennings*, at p. 1117.) " 'Moreover, an expert's opinion rendered without a reasoned explanation of why the underlying facts lead to the ultimate conclusion has no evidentiary value because an expert opinion is worth no more than the reasons and facts on which it is based.' " (*Powell*, at p. 123.) This latter requirement, however—for a reasoned explanation—is more stringently enforced against the party seeking summary judgment than against the party opposing it. Given the obligation to liberally construe the opposing party's evidence, that party's expert need not provide the same level of explanatory details. (*Id.* at pp. 125–126; see also *Brown v. Ransweiler* (2009) 171 Cal.App.4th 516, 529.)

The expert opinion of Charles Ay regarding the insulation's asbestos content is not speculative or lacking in foundation as Dillingham claims. Ay had an eyewitness's description of the insulation. Ay also knew the insulation was removed from steam pipes and machinery over a span of years beginning in the early 1970's. From these facts, and based on his knowledge of insulation materials used in various industrial contexts, including in refineries, Ay concluded the insulation contained asbestos.

Ay reasoned the insulation could only be of two types: 85 percent mag or calcium silicate. 85 mag always contained asbestos. Calcium silicate sometimes contains asbestos. But "into the early 1970s," calcium silicate "always had asbestos as a component." Only in 1974 was a non-asbestos variety installed. It was in the early 1970's, however, that O'Leary came into contact with what was already "old" insulation

5

which was not being applied, but removed. Ay therefore had "no doubt" the insulation "was asbestos containing and was applied during years when such materials were prevalent."

In another recent asbestos case, the Second District concluded a similar declaration by Ay was not speculative and sufficient, in tandem with fact declarations by the plaintiff and a coworker, to defeat summary judgment. (*Ganoe v. Metalclad Insulation Corp.* (2014) 227 Cal.App.4th 1577, 1586 & fn. 4 (*Ganoe*).) The fact declarations established that the installation of new Banbury and lay-down machines at a Goodyear plant in 1974 involved repair of chalky insulation that produced dust. (*Id.* at p. 1580.) Ay opined the disturbed insulation more likely than not contained asbestos. (*Id.* at p. 1581.) According to Ay, " 'prior to 1972 a rigid, whitish, chalky, pre-formed half round pipe covering was almost certainly asbestos-containing,' and that 'if the material was used for hot pipes in industrial settings, such as a tire manufacturing plant, then' '[t]he probability in such circumstances would exceed ninety-nine percent that the material contains asbestos.' " (*Ibid.*)

The appellate court concluded "Ay's experience provided an adequate foundation for this opinion. Nor was it speculative for Ay to conclude that installation of the new machines involved the removal of insulation, or that, in 1974, old insulation removed from 'chalky' 'hot pipes used in industrial settings' more likely than not contained asbestos." (*Ganoe, supra*, 227 Cal.App.4th at p. 1586, fn. 4.) Viewing the fact declaration and the expert declaration most favorably for the plaintiff, the appellate court concluded the trial court erred in granting summary judgment on the plaintiff's exposure claim. (*Id.* at pp. 1579, 1586.)

True, the date for exposure in *Ganoe*, 1974, was somewhat more precise than in the instant case. But a "[p]laintiff must prove the fact, not the date, of exposure." (*Collin v. CalPortland Co.* (2014) 228 Cal.App.4th 582, 595.) Here, Ay at least knew removal of the old insulation was occurring in the early 1970's (an earlier window than the 1974

6

timeframe in Ganoe), when old insulation, and even then-current insulation, was asbestos containing.  Thus, this is not a case, like *Collin*, in which the alleged victim could not even approximate when in a 45-year career he encountered the defendant's substance, which early on would have contained asbestos but later on would have been asbestos-free.  (*Id.* at pp. 586, 594–596.)

Just last year, another division of the Second District concluded a jury finding of asbestos exposure was supported by evidence in many ways weaker than the Hetzel and Ay declarations in this case.  (*Soto v. BorgWarner Morse TEC Inc.* (2015) 239 Cal.App.4th 165, 203–205 (*Soto*).)  Plaintiff's experts "collectively testified (1) [defendant's smelting plant] likely had thermal insulation in place in the 1940's and 1950's, (2) a majority of the thermal insulating products used in the United States during that time contained asbestos, (3) individuals exposed to thermal insulation face an increased risk of mesothelioma, and (4) this is particularly true where the insulation contained asbestos."  (*Id.* at pp. 204–205.)[2]  "This evidentiary chain is perhaps not robust, but, when viewed in the light most favorable to the jury's finding," the Second District concluded it was "adequate to support that finding."  (*Id.* at p. 205.)

Dillingham cites an older case, *Andrews v. Foster Wheeler LLC* (2006) 138 Cal.App.4th 96 (*Andrews*), which considered another Charles Ay declaration and concluded it could not stave off summary judgment.  In *Andrews*, the plaintiff claimed asbestos exposure in 1966 while aboard a naval vessel, the USS Brinkley Bass.  (*Andrews*, at pp. 99–100.)  According to the plaintiff and his experts, the asbestos came from Foster Wheeler gaskets in condensers that had been installed in the ship's boiler room in 1945, nearly 20 years before.  (*Id.* at pp. 99–100, 108.)  Ay reasoned " '[p]acking

---

[2]  One expect also testified, quite vaguely, that he knew the plant " 'has asbestos-containing products,' " but this testimony is not explained or elaborated on in the court's opinion, and the court did not include it in the "evidentiary chain" linking plaintiff to asbestos at the plant.  (*Soto*, *supra*, 239 Cal.App.4th at pp. 176, 203–205.)

and gaskets used in naval applications commonly contained asbestos from the 1940's until at least the early 1970's.' " (*Id.* at p. 111.) He went on, "based on his work on the ship in the 1960's (although it was not shown that Foster Wheeler's condensers were [still] onboard the ship at that time), he understood that asbestos was 'required' for the ship's condensers." (*Ibid.*)

The first item of note about *Andrews* is that the court did not rule Ay's declaration lacked foundation or was speculative. Rather, the court concluded the plaintiffs were the ones speculating beyond what Ay's declaration permitted. (*Andrews, supra*, 138 Cal.App.4th at p. 111.) Indeed, Ay's testimony in *Andrews* differs from his testimony here. In *Andrews*, Ay could only say the gaskets at issue "commonly" contained asbestos during the relevant timeframe. And while Ay could say the condensers would "require" asbestos based on what he saw on ships in the 1960's, that was not the relevant timeframe. (*Ibid.*) Furthermore, the *Andrews* plaintiffs had far more serious evidentiary troubles aside from whether the gaskets contained asbestos. The only evidence of Foster Wheeler condensers onboard were ship schematics; if the initial condensers were Foster Wheeler, the evidence suggested they were replaced with other products 16 years before the relevant time period, and there was no evidence the condensers were actually manipulated at any time that would have produced asbestos dust—only speculation that such manipulation was likely to occur and likely to result in respirable asbestos. (*Ibid.*) Those troubles are not present in this case.

Accordingly, the instant case falls in the *Ganoe* and *Soto* camp, and Ay's declaration was sufficient to raise a triable issue precluding summary judgment.

### DISPOSITION

The judgment is reversed. Costs to appellant.

8

_____

Banke, J.

We concur:

_____

Margulies, Acting P. J.

_____

Dondero, J.

A142848, *O'Leary v. Dillingham Construction N.A., Inc.*